OPINION
{¶ 1} Defendant, John Yeatts, appeals from his conviction and sentence for driving under the influence of alcohol, which was entered upon his plea of no contest after the trial court overruled Defendant's motion to suppress evidence.
 {¶ 2} On December 6, 2001, the Springfield Police Division received an anonymous telephone tip that an intoxicated driver was slumped over the steering wheel of a purple pick-up truck that was parked, its motor running, at the curb of Ludlow Street outside the Nifty Fifties Tavern. Officers Pergram and Montico were dispatched at about 8:30 p.m. to investigate. When they arrived at that location the officers saw a truck matching the description they'd been given. The truck was illegally parked fifteen inches away from the curb. The engine of the truck was running and Defendant was in the driver's seat, slumped forward over the steering wheel.
 {¶ 3} Officer Pergram parked his police cruiser behind the truck and activated his overhead emergency lights. When he approached the driver's door, Officer Pergram detected an odor of alcohol coming from inside the truck, even though its windows were rolled-up. Officer Pergram knocked on the driver's window but Defendant, being either asleep or unconscious, did not respond. Officer Pergram then opened the driver's door. Defendant awoke and stared at Officer Pergram, who testified that a very strong odor of alcohol was coming from inside the vehicle.
 {¶ 4} Officer Pergram asked Defendant for his driver's license but Defendant made no response, and instead continued to stare at Officer Pergram. Officer Pergram noticed that Defendant had vomited over himself and the inside of the truck. When Officer Pergram asked Defendant a second time for his driver's license, Defendant slowly got his wallet out and then held it in his lap without removing his driver's license. When Officer Pergram reached for Defendant's wallet to get his driver's license, Defendant pulled away from Officer Pergram and moved to the passenger side of the truck.
 {¶ 5} Officer Pergram told Defendant that he was under arrest for driving under the influence. Defendant continued to struggle, however, attempting to get away from the officers. Defendant was eventually subdued with pepper spray. At the police station Defendant submitted to a breath test that produced a reading of 0.225 blood alcohol level.
 {¶ 6} Defendant was charged in Clark County Municipal Court with two counts of driving under the influence of alcohol, R.C. 4511.19(A)(1) and (A)(6), and one count of resisting arrest, R.C. 2921.33(A). Defendant filed a motion to suppress evidence pertaining to his arrest. Defendant argued that because there was no evidence demonstrating that the anonymous telephone tip to police that generated the dispatch to Officer Pergram was reliable, reasonable suspicion of criminal activity necessary to justify an investigative stop was lacking.
 {¶ 7} The trial court overruled Defendant's motion to suppress, holding that regardless of the reliability of the tip, the investigative stop was justified by the fact that Defendant's vehicle was illegally parked, and further by the fact that Defendant was found slumped over the steering wheel of his vehicle with the engine running. The court also found that police had probable cause to arrest Defendant for driving under the influence.
 {¶ 8} After the trial court overruled his motion to suppress, Defendant entered a plea of no contest to one count of driving under the influence, R.C. 4511.19(A)(6). In exchange, the State dismissed the remaining charges. The trial court found Defendant guilty and sentenced him to thirty days in jail, with twenty-seven days suspended. The court also fined Defendant five hundred dollars and suspended his driver's license for one year. Defendant appealed from his conviction and sentence. Execution of Defendant's sentence was stayed pending this appeal.
 ASSIGNMENT OF ERROR {¶ 9} "The trial court erred in overruling the motion to suppress because the state did not produce evidence to prove the reliability of the citizen tip."
 {¶ 10} A brief stop of a motorist by police to investigate possible criminal activity is reasonable for Fourth Amendment purposes if, considering the totality of the circumstances, police have a reasonable suspicion of criminal activity based upon specific, articulable facts. Terry v. Ohio (1968), 392 U.S. 1; State v. Freeman
(1980), 64 Ohio St.2d 291.
 {¶ 11} Officer Pergram conducted an investigative "stop" of Defendant's truck based solely upon the dispatch he'd received, which reported an anonymous tip that an intoxicated man was slumped over the steering wheel of a running pick-up truck that was parked at the location where Officer Pergram found Defendant's truck. Defendant claims that the trial court erred when it denied his motion to suppress evidence obtained as a result of this stop because the State's proof failed to demonstrate the reliability of the anonymous tip that led to Officer Pergram's encounter with Defendant. Therefore, according to Defendant, Officer Pergram lacked a reasonable suspicion of criminal activity necessary to justify the investigatory stop, and Defendant's Fourth Amendment rights were violated as a result.
 {¶ 12} When an officer acts on information he received from a third person to make a Terry stop, the State has the burden to show that the source of the information was reliable. City of Maumee v. Weisner,87 Ohio St.3d 295, 1999-Ohio-68. This can be accomplished in either of two ways. The State may show that the source had previously provided the officer information that proved to be correct. Or, if that prior experience is lacking or the source was anonymous, the State may show that subsequent events corroborated the substance of the tip. Illinoisv. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. However, the corroboration must demonstrate that the tip was "reliable in its assertion of illegality, not just its tendency to identify a determinate person." Florida v. J.L. (2000), 529 U.S. 266, 272, 120 S.Ct. 1375,146 L.Ed.2d 554.
 {¶ 13} An officer who performs a valid Terry stop need not be acting on the basis of his own personal knowledge. He may rely on information gleaned from other valid sources, such as other officers or a police radio dispatch or flyer. United States v. Hensley (1985),469 U.S. 221, 105 S.Ct. 675. However, the State must then establish an underlying reasonable basis for the report on which the officer acted.Weisner, supra; State v. Smartt (1989), 61 Ohio App.3d 137.
 {¶ 14} When Officer Pergram arrived at the scene he found a vehicle matching the description given in the anonymous tip, parked where the tipster said it would be. Those facts don't corroborate the illegality alleged, which was that the driver was seriously impaired by alcohol. Officer Pergram came by those additional facts only when he then walked up to the vehicle and saw Defendant slumped over the wheel. And, he did that only after he'd first pulled his cruiser to a stop behind Defendant's truck and turned on its overhead lights.
 {¶ 15} A warrantless Fourth Amendment seizure can't be justified by facts acquired as a result of the intrusion involved. Smith v. Ohio
(1990), 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464. A seizure occurs for purposes of the Fourth Amendment when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. United States v. Mendenhall
(1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497. "That generally occurs when a police officer has by physical force or show of authority restrained the person's liberty, so that a reasonable person would not feel free to decline the officer's requests or otherwise to terminate the encounter." State v. Gonsior (1996), 117 Ohio App.3d 481, 485.
 {¶ 16} In Gonsior, we said that a good argument could be made that a seizure occurred when an officer activated the overhead lights of his cruiser as he pulled to a stop near a vehicle around which the defendant and his companions were standing. Any doubt was eliminated by the officer's subsequent direction that they place their hands on the vehicle, an order they complied with. That direction plainly affected their rights of liberty and freedom of movement, interests which the Fourth Amendment protects.
 {¶ 17} Here, as in Gonsior, the officer activated the lights on his cruiser when he approached the Defendant. Unlike Gonsior, Officer Pergram gave no other commands that restrained Defendant's liberty or freedom of movement. However, it is undisputed that Defendant was then incapable of exercising those rights because he was unconscious.
 {¶ 18} The Mendenhall force or show of authority requirement implies that the officer's particular actions would have had an adverse effect on a reasonable person's calculus whether to decline the officer's request or to terminate the encounter. However, an unconscious subject is incapable of exercising any such calculus at all. In that event, the officer's actions cannot function to impair the subject's freedom of movement or his exercise of his liberty interests. Absent that, no seizure occurs for purposes of the Fourth Amendment.
 {¶ 19} On this record, we conclude that Defendant was not seized for purposes of the Fourth Amendment when Officer Pergram activated the lights on his cruiser. Instead, the seizure occurred when Defendant awoke to find Officer Pergram opening the driver's door of his truck. By then, the officer had seen the Defendant slumped over the steering wheel, asleep or unconscious. That was sufficient corroboration of the illegality asserted in the anonymous tip to render the tip reliable and establish the reasonableness of Officer Pergram's reliance upon the tip.Florida v. J.L., supra; State v. McGuire (Dec. 21, 1994), Clark App. No. 94CA20. The further steps the officer then took to investigate the suspicious behavior involved were proper under the rule of Terry, and unquestionably gave rise to probable cause to arrest Defendant for D.U.I. Defendant's Fourth Amendment rights were not violated.
 {¶ 20} The assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.