Cushing, J.
This case is heard on error to the court of common pleas.
It is claimed that the defendant in error, Maud McKim, was returning from Chester Park to the Bethesda Hospital, at Oak street and Reading road, where she was residing temporarily. North of the intersection of these streets, she claims to have given a signal to stop the car; that it did stop at the usual stopping place; that while she was in the act of alighting the car suddenly started and she was thrown to the street,; that the back of her head and her back struck the street in such a way that she was injured; and that she became sick and disabled as a result of said fall and was compelled to and did undergo an operation.
The answer of the company was an admission of its incorporation, its operation of the street railroad in question, and that it was a common carrier of passengers for hire. It denied that the plaintiff was injured as the result of any negligence on the part of its conductor or motorman, and denied generally all the allegations of the petition not admitted. For a second defense, it pleaded sole negligence on her part.
One of the issues made by the pleadings was as to the negligence- of the defendant in starting its car, after it had come to a full stop, before plaintiff had time to alight.
Another question was whether or not the operation plaintiff underwent on February 26, 1918, was the result of the injuries, if any, she received on *110 August 16, 1916, by reason of the negligence claimed by her on the part of the defendant company, and also the measure of damage thus presented.
It was stipulated at the trial that so far as the company, its conductor, motorman or other employe knew, there was no accident at the time and place in question.
The only witness called by plaintiff to show how the accident happened was Mary M. Troup. Miss Troup had accompanied her to Chester Park. They were living together. No passenger was called to testify, and, while it was stated that a third person assisted plaintiff from the scene of the accident to the hospital, that person’s name was not given, nor was he called.
Plaintiff wrote a letter on the day after the accident asking the company for damages. She filed an action against the company eleven days after the accident.
While there are numerous assignments of error, the principal errors complained of are that the court erred in the admission and rejection of testimony; that it erred in its charge; that the verdict is excessive and appears to have been given under the influence of passion and prejudice; and that counsel for plaintiff was guilty of misconduct.
At the trial plaintiff was permitted to state to the jury what operation the doctors told her they had performed, and what its effect would be. This was clearly error.
The doctors were permitted to answer hypothetical questions, which answers did not conform to the rule of hypothetical questions:
*111 “Q. Doctor, assuming that the plaintiff, Miss McKim, on August 16th, 1916, was a passenger on a car belonging to the defendant and undertaking to alight from the car, and while in the act of alighting, the car suddenly started and she was thrown violently to the ground, striking on her back and head, and was confined in the hospital from August 16th, 1916, up until the time you saw her on September 1st, 1916, I will get you to state, whether the condition you found her in would be attributable to the accident I have just described?”
“A. Having known her prior to the accident and having seen her in good health, and knowing of the accident, I believe that the accident would be the cause of her ill-health afterwards. It is a known fact that injury to certain nerves produce certain nervous symptoms, which take a long time to regain their normal condition and sometimes they never regain them.”
A doctor may testify from personal knowledge or from an examination of the patient, from a history of the case as he received it, and state what her condition was. The rule as to expert witnesses is that the expert may answer a hypothetical question when the* question embodies a statement of facts that there is some evidence in the' record tending to establish; but he may not combine matters known to him personally, not testified to, with statements of fact in the record, in answering a hypothetical question.
Miss Troup was asked and permitted to testify as to Miss McKim’s injury and suffering. A lay witness may testify to exclamations of pain and suffering made in her presence, but she may not give *112 a detailed opinion as to the suffering and injuries the patient has received. Williams v. Brown, Exr., 28 Ohio St., 545, and Raub v. Carpenter, 187 U. S., 159, 161.
Another error in the-court’s ruling was that counsel for defendant was not permitted to incorporate by reference a statement made by Dr. Gillespie in his deposition, where he said that he gave the hospital authorities the result of his examina-tion and his opinion of Miss McKim’s injuries and her conduct. The question was properly ruled out by the trial court. He was further asked if he afterwards stated the same to Miss McKim, the question and answer being:
“Q. Did you ever have a conversation with the plaintiff in which you said that to her ?
“A. Yes sir, yes sir, I did, more than once.” Counsel for the railroad company desired to explain the word “that” in the question quoted, by giving the substance of what Dr. Gillespie had told the hospital authorities, “I told her she was not injured in my. judgment and that I did not like her conduct in the case; that I was satisfied that-no great injury had been inflicted,” making the statement refer to the word “that.” After giving his deposition Dr. Gillespie entered the army, was beyond the jurisdiction of the court, and could not be called as a witness. The court, in refusing to permit counsel to place Dr. Gillespie’s testimony fairly before the jury, was in error.
Another error assigned was the conduct of counsel in argument to the jury. This will be considered in connection with the size of .the verdict, *113 as to whether or not it was influenced by passion or prejudice.
The measure of damages in personal injury cases includes compensation for injuries, whether permanent or otherwise, pecuniary loss, if any, as well as compensation for pain and suffering. The defendant’s ability to respond is no part of the measure of damages. The pleadings did not present that issue, nor was any evidence offered on the question.
In argument, counsel also stated his opinion of Dr. Pope’s standing in the' medical profession. In the absence of evidence on that question this argument was not within the privilege of counsel. Both of these statements were of alleged facts not adduced in evidence and were improper. Hayes v. Smith, 62 Ohio St., 161.
In the trial of a case the judge is charged with the duty of maintaining order, guarding the rights of the parties, and seeing that the issues are so presented that the minds of the jurors are not swayed by prejudice against either party. This includes the arguments of counsel. Arguments may be and sometimes are made that so grossly abuse the privilege of counsel that it is the duty of the judge, without waiting for objection, or to be reminded of it, to stop counsel then and there. Dayton Folding Box Co. v. Ruehlmann, 11 C. C., N. S., 493, 494, and Hayes v. Smith, supra, page 187.
The record discloses that within two weeks after the injury complained of Miss McKim returned to her home, that she completed her course of study, and graduated with her class in December of the *114 same year, that she worked at private nursing a greater part of the time until her operation in 1918, that since that time she has been employed by the city of Louisville at a salary of $75 per month, working five days per week, and that at private nursing she could make $35 per week. From these facts, when considered in connection with the argument of counsel and a verdict of $7583, it cannot be said that the verdict was not returned under the influence of passion and prejudice.
A consideration of the errors to which we have called attention leads to the conclusion that substantial justice was not done on the trial of this case.
The verdict and judgment of the court below will therefore be set aside, held for naught, and a new trial ordered.

Judgment reversed, and cause remanded.

Shohl, P. J., and Hamilton, J., concur.