PETERS, APPELLEE, *v.* PETERS, APPELLANT.

(No. 1160—Decided June 25, 1962.)

*Mr. Maxwell Finkleman* and *Mr. Milton Thurman, Jr.*, for appellee.

*Mr. Sam Levin*, for appellant.

KEEFE, J. This is an appeal on questions of law in which the appellant (defendant below) seeks a reversal of a judgment of the Division of Domestic Relations of the Court of Common Pleas of Butler County, Ohio.

The parties will be referred to as they appeared in the court below.

Plaintiff and defendant were married in 1955, each for the

second time. The marriage lasted less than one year. No children were born of the marriage. Plaintiff instituted suit for divorce after less than one year of marriage and was awarded an uncontested decree of divorce, defendant being in default of appearance and without counsel.. The decree of divorce awards plaintiff $400 as permanent alimony, payable at the rate of $10 per week. The decree provides that, if any payment is missed, then the entire amount of $400 becomes due. The decree was entered January 23, 1956.

The exact language of the decree in this respect is:

"It is further ordered that the plaintiff is hereby awarded the sum of $400 as permanent alimony in said case. Said alimony payable at the rate of $10 per week, all of which shall be due and payable upon defendant's failure to make ordered payment of $10 per week."

Defendant made no payment whatsoever pursuant to the divorce decree, and, presumably, the entire $400 became due one week after the date on which the decree was entered. In other words, by about the first of February 1956, the full $400 was due.

Since the portion of the decree quoted above refers to "permanent alimony," I want to note parenthetically that the authorities in general do not support any distinction between cases where the allowance is for temporary alimony and where permanent alimony is involved. 18 Ohio Jurisprudence (2d), 67, Section 135.

On September 26, 1961, the attorney for plaintiff filed a motion for citation of defendant for contempt. A copy of this citation was personally served on defendant on September 27, 1961, ordering him to appear on October 13, 1961, to show cause why he should not be punished for contempt. Defendant did not appear on October 13, and a few days later his attorney filed a motion to terminate the contempt proceedings, contending that the court at that time (in 1961) had no jurisdiction to find defendant in contempt. Defendant maintained that there was no provision in the original divorce decree indicating that it was subject to further order or action of the court, and that the plaintiff's recourse was not through a motion for citation for contempt but by proceedings in aid of execution to attempt to collect the $400.

Without ruling on defendant's motion to terminate contempt proceedings, on November 6, 1961, the court below found defendant guilty of contempt and sentenced him to ten days in jail. On November 27, he filed his notice of appeal in this court.

It is interesting to note that the defendant is now married to his third wife and has never paid the $400 alimony due the second wife six and a half years ago.

The real issue here is whether the court below had the power to punish defendant for contempt and send him to jail for not paying the $400. However, first we want to consider very briefly defendant's contention that the lower court committed error in not hearing or deciding defendant's motion to strike the action in contempt, claiming that it was the duty of the court to consider it. Whether this is a meritorious position or not, at this juncture we are assuming that the trial judge, if he had heard the motion, would have overruled it. Certainly, everything he did indicates that he was not favorably impressed by the merits of the motion, including his order for the arrest of the defendant for the purpose of having him jailed. It must be remembered that, before adjudging defendant in contempt, the court did afford him the opportunity of a hearing, but the defendant did not bother to appear although he had personal notice of the hearing.

Upon the language and reasoning of the Supreme Court in *Holloway* v. *Holloway* (1935), 130 Ohio St., 214, and *State, on Complaint of Cook,* v. *Cook* (1902), 66 Ohio St., 566, we conclude that the court below had jurisdiction and authority to adjudge defendant guilty of contempt and sentence him to jail. It is stated as follows in the *Holloway case*:

"The sole question presented for our determination is whether contempt proceedings lie against a husband for failure to pay alimony in the amounts provided for in a separation agreement, which separation agreement is incorporated into and made a part of the decree of the court.

"A decree allowing alimony is enforcible by proceedings in contempt. The court awarding alimony has inherent power to enforce payment by contempt proceedings. * * *

"* * *

"* * * an alimony award is not a money judgment; nor is it in the nature of a business debt. * * * Consequently, the allow-

ance of an alimony award may be enforced by proceedings in contempt and the recalcitrant may be punished by fine and imprisonment * * *. * * *

"A distinction may be drawn between ordinary judgments and an order for the payment of alimony. [Quoting the following from *Fowler* v. *Fowler*, 61 Okla., 280.] '* * * an order to pay alimony * * * though partaking also, of the nature of a judgment * * *, goes further, and is a direct command of the court to the defendant to pay the sums therein mentioned. This command it has been the practice of courts from time immemorial to enforce by proceedings for contempt.' "

Paragraph two of the syllabus of the *Cook* case is as follows:

"A final money decree for alimony is not a debt within the purview of the constitutional inhibition against imprisonment for debt, but is such an order as that, under favor of Section 5640, Revised Statutes, punishment as for a contempt may follow a willful failure to comply with it."

Defendant calls attention to the following from 18 Ohio Jurisprudence (2d), 69, Section 135:

"But it is not consistent with Ohio legislation upon the subject of divorce and alimony, judgments and orders, to enforce the payment of a judgment for money, in gross, by a contempt proceeding. Proceedings in aid of execution are the proper remedy, wherein full and complete investigation may be had * * *."

There are no cases cited in direct support of this proposition quoted from Ohio Jurisprudence (2d). The state of the law seems to be rather general in Ohio and elsewhere that, although a decree awarding alimony does partake of the nature of an ordinary judgment, an ordinary judgment does not order a defendant to pay anything but simply adjudicates the amount owing, whereas an award of alimony goes further and is a direct command to defendant to pay the sum or sums therein mentioned. Case after case holds that the public as well as the parties are interested in the enforcement of an alimony decree.

In Section 135 of Ohio Jurisprudence (2d), from which the above language is quoted, there is a reference to *Myers* v. *Myers* (1896), 3 N. P., 162. The opinion was written in connection with the court's sustaining of a motion requiring a party to show

cause why he should not be proceeded against as for contempt, and states, in part, as follows:

"And that brings us in this case to the consideration of the question as to whether or not the journal entry in this case shows an order on the part of the court, or a judgment. A judgment in Ohio, and under our practice, is the final determination of the rights of the parties in action. An order of the court is a direction by the court or judge made or entered in writing, and not included in a judgment.

"Again, if this is an order or direction of the court, then, until it has been fully complied with, the court does have jurisdiction not only at the terms at which said order was made, but all after terms of the court, until compliance with the order is had by the party performing the same, against whom it is made and entered.

"The court in this case, by its decree, provided that: 'It was ordered and adjudged that the plaintiff pay to the defendant, as her reasonable alimony, in money, the sum of $450.' If the journal entry had added there 'for which judgment is rendered,' the finding of the court would have been a judgment for that amount of money in gross; but it did not so find, and did not end there, but added thereto the words 'payable at the rate of $15 per month until paid; $15 to be paid on the first day of July, 1895, and $15 on the first day of each and every month thereafter until said sum of $450 is fully paid.' It will be observed at a glance, by the reading of the journal entry, that it was not the intention, nor did the court render a final judgment in gross for the sum of $450, but did direct and order that the plaintiff pay $15 per month, commencing at the time named, until he had paid the sum of $450. It is true that the journal entry said that in default of any such payment for the period of five days, execution is allowed to issue therefor. But that is merely superfluous."

It seems to me that there can be hairsplitting in different factual situations as to whether an alimony award is an ordinary judgment pursuable exclusively through proceedings in aid of execution, or whether such an award is a direct command by the court to the defendant to pay, noncompliance therewith being punishable as for contempt. Because of the public interest involved in both temporary and permanent alimony and be-

cause of the nature of an alimony decree and its purpose, it seems there ought not to be this technical differentiation, to the extent it does exist, and every Ohio decree awarding alimony ought to be enforcible by appropriate contempt proceedings. The law requires defendant to have a hearing before he can be found to be in contempt and this affords him an opportunity to present facts bearing upon his capability to make payment. A person may not be found guilty of contempt where he is unable to pay alimony. 18 Ohio Jurisprudence (2d), 73, Section 138.

The court below had the power to make an adjudication of contempt against the defendant, and that judgment is, therefore, affirmed.

*Judgment affirmed.*

LONG, P. J., and HILDEBRANT, J., concur.